## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

OLYMPIA HOTEL MANAGEMENT, LLC, a Delaware limited liability company,

Plaintiff,

v.

THE BEND HOTEL DEVELOPMENT COMPANY, LLC, an Illinois limited liability company,

Defendant.

Civil Action No.: 2:20-CV-00136-NT

## THE BEND HOTEL DEVELOPMENT COMPANY, LLC'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR OTHERWISE TRANSFER
## TO THE CENTRAL DISTRICT OF ILLINOIS

### Introduction

Defendant, The Bend Hotel Development Company, LLC ("The Bend"), respectfully requests that this Court dismiss the Complaint filed by Plaintiff, Olympia Hotel Management, LLC ("Olympia") pursuant to Fed. R. Civ. P. 12(b)(1) and (2); or, alternatively, transfer this action to the United States District Court for the Central District of Illinois, because it is the most appropriate and most convenient forum to adjudicate the case pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

Olympia's Complaint alleges that The Bend has defaulted on its obligations under the terms of two contracts – called Hotel Management Agreements ("HMAs") – by failing to maintain a certain balance in an operating account established for the operation of a hotel owned by The Bend, and by declining to pay Olympia $300,000 in fees after Olympia unilaterally terminated the HMAs. [See Compl., ¶36-45; Dkt. No. 1].

Every material element of this dispute is found in the State of Illinois. Olympia was hired to manage a hotel in East Moline, Illinois by The Bend, a company organized in the state of Illinois under Illinois law. Multiple Olympia employees traveled to Illinois to solicit The Bend's business. When the HMAs were ultimately signed, they were signed in Chicago, Illiniois. Olympia employees repeatedly traveled to Illinois to interview and hire hotel staff. The operating account giving rise to the alleged default was opened with a bank in Illinois, and the HMAs contain a choice of law provision providing that they are governed by Illinois Law. The only element of this case that is located in Maine is Olympia itself. Nevertheless, Olympia has elected to file its Complaint in the District of Maine. Olympia has failed to allege facts sufficient for this Court to find that it has personal jurisdiction over The Bend, and the facts contained herein establish that Illinois – not Maine – is the appropriate venue for a lawsuit to resolve the allegations made by Olympia.

Olympia has also failed to allege that this Court has subject matter jurisdiction over this dispute. It has not properly alleged The Bend's citizenship, because The Bend is a Limited Liability Company and Olympia has failed to allege the citizenship of The Bend's member(s), which it must do. Olympia has therefore not properly alleged diversity jurisdiction and the complaint should also be dismissed on that basis.

The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (2). In the alternative, this Court should find that proper venue is not in Maine, but in Illinois, and transfer this matter to the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. §§ 1404(a) and 1406 (a).

## Background

### I.     The Bend and its Relationship with Olympia.

The Bend is an Illinois limited liability company with its principal office in East Moline, Illinois, organized on November 23, 2016. [See Dkt. #13, Declaration of Michael VanDeHeede at Decl., ¶3]. All of The Bend's employees live in or near East Moline, Illinois. [VanDeHeede Decl., ¶8]. The Bend was the owner of two Hyatt properties: Hyatt Place, a select service hotel, and Hyatt House, an extended stay hotel (the "Hotel"). [VanDeHeede Decl., ¶5]. The Hotel is located on 132.61 acres of real property on the banks of the Mississippi river in East Moline, Illinois. [VanDeHeede Decl., ¶6]. Great River Development Hotels, LLC ("Great River"), formerly known as River Eagle Hotels, LLC, is the developer of that property. [VanDeHeede Decl., ¶7].

In 2013 and 2014, Great River was simultaneously working to build the Hotel and to find a manager who would manage the Hotel once it was built. Great River began negotiating with Olympia to secure their management services. [VanDeHeede Decl., ¶11]. During those negotiations, John Schultzel, who was then Olympia's Vice President of Hotel Management, traveled to Illinois to solicit The Bend's business. [VanDeHeede Decl., ¶12]. Great River and Olympia negotiated and ultimately entered into a contract under which Olympia would operate and manage the Hotel. On May 9, 2014, the parties executed the two HMAs, with one governing Hyatt House and the other governing Hyatt Place.[1] Schultzel traveled to Chicago, Illinois to meet with representatives from The Bend to sign the HMAs. [VanDeHeede Decl., ¶15]. The HMAs were signed at the Hyatt Place South, located in Hyde Park, Chicago, Illinois, which is owned and operated by Olympia. [VanDeHeede Decl., ¶¶ 15, 29].

---

[1] True and correct copies of the HMAs have been entered into the record by Olympia in its Complaint. See Compl. Exh. A & Exh. B. [Dkt. #1, pgs. 13-43 and 44-74]. See also VanDeHeede Decl., ¶¶ 15, 31, and 32.

The HMAs variously obligated and authorized Olympia to take various actions to operate the Hotel. Under Article II, Section 2.1 of each of the HMAs, Olympia was responsible for the hiring, promoting, discharging, and supervising of all staff at the Hotel.[2] Both Schultzel and Chris Chapin, Olympia's Senior Director of Sales, traveled to Illinois for the purpose of interviewing and hiring employees for the Hotel, and conducted those interviews in The Bend's offices. [VanDeHeede Decl., ¶¶23-24]. Olympia hired a General Manager, Director of Sales and Marketing, Inside Sales and Catering Director, Head Housekeeper, maintenance personnel, chefs, and approximately 80 total employees to staff the hotel. [VanDeHeede Decl., ¶25]. Olympia was responsible for the hiring, promoting, discharging and supervising of all of the staff working in the Hotel. [Ibid.] Several other Olympia employees visited The Bend and the Hotel; Olympia's Director of Construction, Timothy Schneider, and Vice President of Development, Mike Zimmerman, visited Illinois during the construction of the Hotel and Olympia's then-President and CEO also traveled to Illinois and met with representative of the Bend on multiple occasions. [VanDeHeede Decl., ¶¶18-20].

Under Article III, Section 3.1 of both HMAs, Olympia was authorized to establish one or more Operating Accounts at financial instructions approved by The Bend, which would be used to pay for any operating expenses of the Hotel.[3] That Operating Account – which is the basis of Olympia's claimed breach – is located at Blackhawk Bank and Trust in Milan, Illinois. [VanDeHeede Decl., ¶¶26-27]. Article VII, Section 7.3 of both HMAs contains identical language regarding governing law and venue:

> 7.3 Governing Law; Venue. The laws of the State of Illinois shall govern the validity, enforcement, and interpretation of this Agreement unless otherwise provided herein or agreed to by Owner and Operator.[4]

---

[2] See VanDeHeede Decl., ¶21, and Compl. Exh. A and. Exh. B, p. 6.
[3] See VanDeHeede Decl., ¶¶26-27 , and Compl. Exh. A and Exh. B, p. 15.
[4] See VanDeHeede Decl., ¶28 and Compl. Exh. A and Exh. B, p. 26.

In March of 2017, Great River conveyed title to the Hotel to The Bend. Accordingly, Great River and Olympia executed the First Amendment to each HMA, under which The Bend was assigned the interest in each HMA by Great River. [VanDeHeede Decl., ¶16.]

Olympia alleges that it properly performed all of its obligations under the HMAs, and that Olympia has brought this action as a result of The Bend's failure to cure alleged defaults under the HMAs. [Compl. ¶39]. Olympia seeks declaratory judgment that it properly terminated the HMAs and that it is entitled to termination fees, and seeks damages for breach of contract. [Compl. ¶36-45].

## II.      The Bend has no jurisdictional connections with Maine.

In its Complaint, Olympia does not allege that this Court has personal jurisdiction over The Bend. No reference to personal jurisdiction appears in the "Jurisdiction and Venue" section of the Complaint.   Olympia did include an unsupported conclusory claim that Venue is proper, referencing nothing more than 28 U.S.C. §1391(b)(2). [Compl. ¶ 3-6].

Throughout the Complaint, Olympia attempts to connect The Bend to the State of Maine by alleging that: (1) over the course of negotiations regarding the HMAs, calls were made and emails were sent to Maine [Compl. ¶ 12]; (2) that The Bend directed calls and emails to Olympia in Maine that were related to the HMAs [Compl. ¶18]; and (3) that Olympia performed work for The Bend from its offices in Maine [Compl. ¶20-23.]  These bald assertions are not sufficient to support a finding of personal jurisdiction in the State of Maine.

The Bend is not registered as a foreign LLC in Maine, nor does it have any employees in the State of Maine. [VanDeHeede Decl., ¶¶8-10].   None of the Bend's employees have traveled to Maine for during the negotiations between the parties. [VanDeHeede Decl., ¶13]. Operating

funds for the Hotel were held at a bank in Illinois. [VanDeHeede Decl., ¶¶27]. There is no appropriate basis upon which to find personal jurisdiction exists over The Bend.

## Law and Argument

I.   **Olympia's Claims Against The Bend Should Be Dismissed for Lack of Personal Jurisdiction.**

### A.  Legal Standard

Federal district courts may only adjudicate claims where they have jurisdiction over the defendant. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969); *see* Fed. R. Civ. P. 12(b)(2). Accordingly, Olympia bears the burden to establish that this Court has personal jurisdiction over The Bend. *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 674- 675 (1st Cir. 1992).

A court may assert two kinds of personal jurisdiction over a defendant: general and specific. *United Elect. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088-89 (1st Cir. 1992). The plaintiff must make a *prima facie* showing that the Court has jurisdiction over the defendant under both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Id.* at 675. To make a *prima facie* showing, the plaintiff must go beyond the pleadings and come forward with affirmative proof of all facts essential to personal jurisdiction. *Id.* In any case arising under diversity jurisdiction, a federal court's personal jurisdiction is equivalent to that of the forum's state court. *See Telford Aviation, Inc. v. Raycom Nat., Inc.*, 122 F. Supp. 2d 44, 45 (D. Me. 2000) (citing *Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995)). The limits of Maine's long-arm statute, 14 M.R.S.A. § 704-A, are coextensive with the limits of the Due Process Clause of the Fourteenth Amendment. *Id.*

Olympia's Complaint lacks sufficient allegations from which this Court could conclude that it has personal jurisdiction over The Bend. At best, Olympia attempts to seed the idea that this Court may have personal jurisdiction over The Bend due to the fact that Olympia is located in

Maine. This singular fact is insufficient to establish personal jurisdiction over The Bend. The allegations of the Complaint describe a dispute relating to real property in Illinois, an Operating Account for that property held by a bank in Illinois, and a contract governed by Illinois law. These allegations are insufficient to establish personal jurisdiction over The Bend under either general or specific jurisdictional grounds.

### B. General jurisdiction does not exist because The Bend is not "at home" in Maine and this is not an exceptional case.

The Supreme Court has made clear that in nearly every circumstance general jurisdiction over a corporate defendant exists only in the two places where the defendant is "at home"—the defendant's state of incorporation and the location of its principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1552 (2017) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014)) ("The 'paradigm' forums in which a corporate defendant is 'at home' are the corporation's place of incorporation and its principal place of business."). Finding general jurisdiction based on a corporation's affiliations with a forum state should be limited to exceptional cases, and such affiliations should be appraised in the context of the "corporation's activities in their entirety, nationwide and worldwide." *Id.* at 1558-59, citing *Daimler* at 760-62, 761 n.19, 762 n.20.

The citizenship of an unincorporated entity, such as a limited liability company is determined by the citizenship of its members. *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54–55 (1st Cir. 2006). For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Daimler*, 134 S.Ct. at 760. A person's domicile "is the place where he has a true, fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning." *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 49 (1st Cir. 1992).

A finding of general jurisdiction requires "continuous and systematic contacts, [and] is considerably more stringent than the standard for specific jurisdiction which requires only a showing of minimal contacts." *B.J. Tidwell Indus., Inc. v. Zawacki*, 645 F. Supp. 2d 7, 11 (D. Me. 2009). Olympia has made no effort to allege any sort of contact with Maine which could support a finding that The Bend is subject to general personal jurisdiction. To the contrary, Olympia alleges that "upon information and belief, none of the members of The Bend are citizens of Maine." [Compl. ¶5]. Olympia has made no allegations which support a determination that The Bend is subject to the general personal jurisdiction of this Court, and this Court cannot find it has general personal jurisdiction over The Bend as a result.

### C. Specific jurisdiction does not exist for because The Bend has not purposefully directed its activities at Maine, and this litigation arises out of activities in Illinois.

Specific jurisdiction exists only when "(1) the defendant has 'purposefully directed' his activities at the forum; (2) the litigation arises out of or relates to those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). To establish specific jurisdiction, plaintiff must adduce facts which show that "there is a demonstrable nexus between ... a plaintiff's claims and a defendant's forum-based activities." *U.S. v. Swiss Am. Bank, Ltd*., 274 F.3d 610, 618 (1st Cir. 2001).

The First Circuit applies a three-part test to determine whether a defendant has contacts with a forum sufficient for the court to exercise specific personal jurisdiction over the defendant consistent with Due Process. First, a court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum's laws. Second, the court must ask if the defendant's contacts constitute purposeful availment of the benefits and protections

afforded by the state's laws. If the plaintiff has cleared the first two hurdles, the Court considers the overall reasonableness and fundamental fairness of an exercise of jurisdiction. See *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999) (holding that a Florida-based fund was not subject to personal jurisdiction in New Hampshire, where the relevant contract had been created in Florida and the Fund's alleged breach by failing to disburse funds to the school would have occurred in Florida).

The reasonableness element considers whether a party reasonably can foresee that they may be called to account in a particular jurisdiction. *Id.* at 292. Where the claim is for breach of contract, the Court's analysis concerns whether the defendant's contacts with the forum "were instrumental either in the formation of the contract or in its breach." *Id.* at 289. Merely entering into a contract with a person from another state does not grant the other state specific jurisdiction over the out-of-state contractor. *Burger King*, 471 U.S. at 478. Instead, the Court must look at the prior negotiations of the parties, the contemplated future consequences of the contract, the terms of the contract, and the parties' actual course of dealing to determine whether there are minimum contacts sufficient to satisfy due process. *Id.* at 479.

Neither the allegations made by Olympia nor the facts underlying this dispute support a finding that The Bend is subject to specific jurisdiction in Maine under this "relatedness, purposeful availment, reasonableness" test. The cause of action does not arise sufficiently out of The Bend's contacts with Maine, the HMA's governing law provision explicitly rejects the protections of laws anywhere other than Illinois, and based on the course of conduct between the parties, The Bend could not reasonably foresee that it would be called to account in Maine when it signed a contract in Illinois for services to be provided in Illinois. This matter should be dismissed because The Bend has no contacts with Maine that are sufficiently related to the claims

asserted in this case, there is insufficient evidence of purposeful availment, and an exercise of jurisdiction in Maine would offend due process. *Phillips*, 196 F.3d. at 292.

          i.    <u>Relatedness</u>

When evaluating the relatedness element in contract claims, courts look to and draw inferences from "the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing. *Burger King*, 471 U.S. at 479. The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005). The relatedness requirement, in particular, "ensures that the element of causation remains in the forefront of the due process investigation. *Id.* at 62. The First Circuit "steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect. (citations omitted)" *Id.* at 61 (holding that District of Maine lacked specific personal jurisdiction over a hospital in Massachusetts, where the hospital's contacts with Maine included contacts to the Maine-based plaintiff and coordinating Maine-based post-surgical care).

Olympia asks for a declaration that it properly terminated the HMAs and asks for damages as a result of an alleged breach of contract. The alleged justification for Olympia's breach, as well as the alleged basis for Olympia exercising a right to terminate the HMAs, is that The Bend failed to maintain "an adequate minimum working capital balance in the Operating Account." [Compl., ¶ 31-32]. Here, neither the alleged default, nor the Operating Account, nor the HMAs themselves have material connections to the State of Maine. Additionally, when applying the *Burger King* evaluation of prior negotiations, contemplated future consequences, and the parties course of dealing, the facts do not support an exercise of personal jurisdiction in Maine.

Over the course of the negotiations between the parties, Olympia sent its Vice President of Hotel Management, John Schultzel, to Illinois for the purpose of soliciting business. [VanDeHeede Decl., ¶12]. Schutzel made several subsequent trips to Illinois for the purpose of executing the HMAs and hiring employees to staff the Hotel. [VanDeHeede Decl., ¶¶15, 23.] As to the terms of the contract, under the "Governing Law; Venue" section of both HMAs, the parties agreed that the laws of the State of Illinois shall govern.[5] As to the actual course of dealing between the parties, Olympia's obligations under the HMAs were to operate a hotel in Illinois, and Olympia hired employees based in Illinois and opened an Operating Account in Illinois to do so. The Bend, particularly in light of the "Governing Law; Venue" provision, could not have anticipated litigation 1,600 miles away in Maine.

As to the causation of the alleged breach, which the First Circuit in *Harlow*, 432 F.3d at 61, stated must "remain at the forefront" of such an analysis, Olympia has alleged that The Bend defaulted on its obligation to maintain a minimum working capital balance in the Operating Account, and breached the HMAs by refusing to pay Olympia a fee upon termination. [Compl. ¶29-35]. In *Phillips*, the First Circuit evaluated and upheld the district court's evaluation as to whether an exercise of personal jurisdiction was appropriate. 196 F.3d at 289. The district court observed that the Florida-based fund's activities in New Hampshire were limited to sending checks and letters to the state and a single visit to the New Hampshire-based school. *Id.* The district court further observed that the alleged breach (the Fund's decision as to what amounts would be disbursed to the school) would have occurred in Florida.

Olympia's allegations relate to an operating account maintained by a bank in Illinois for the operation of an Illinois-based business, under a contractual agreement with a Governing Law

---

[5] See VanDeHeede Decl., ¶28, and Compl. Exh. A and Compl. Exh. B, p. 26.

provision explicitly stating that the law of Illinois would apply. The Bend's alleged breach of contract by refusing to pay Olympia a termination fee, if it is a breach at all, would have occurred in Illinois. On these facts, this matter is not sufficiently related to the State of Maine.

ii.   Purposeful Availment

As to purposeful availment, specific jurisdiction requires that the defendant's contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable." *Phillips*, 196 F.3d at 284.  Under the terms of the HMAs, The Bend could not possibly foresee its presence before the state's courts. The "Governing Law; Venue" provision contained in Section 7.3 of both HMAs provides that the laws of the State of Illinois shall govern the validity, enforcement, and interpretation of this Agreement. Under the terms of the Agreement, The Bend purposefully contracted in such a way as to *not* invoke the benefits and protections of Maine's laws.

Merely entering into a contract with a person from another state does not grant the other state specific jurisdiction over the out-of-state contractor. *Burger King*, 471 U.S. at 478. Courts do, however, consider where a contract was created. In *Phillips*, *supra,* the Court noted that the relevant contract was created in Florida, and ultimately concluded that none of the claims were sufficiently related to contacts in New Hampshire. *Phillips*, 196 F.3d at 289.

 Even if The Bend exchanged emails with Olympia employees located in Maine, the terms of the "Governing Law; Venue" provision make clear that The Bend did not purposefully establish minimum contacts with the forum jurisdiction for The Bend to have "purposely availed" itself of the jurisdiction of the State of Maine. The Bend's work is wholly related to the Hotel in East

Moline, Illinois. The relationship between The Bend and Olympia is chiefly related to the manner in which Olympia operates the Hotel through its locally-sourced General Manager and Employees.

On the other hand, Olympia in fact purposely availed itself to the laws of Illinois. Olympia is registered with the Illinois Secretary of State as a foreign LLC authorized to do business in Illinois[6]. Several of Olympia's senior employees – including their then-President and CEO, then-Vice President of Hotel Management, and Senior Director of Sales – have visited Illinois for purposes related to the management of the Hotel. Schultzel alone visited Illinois no fewer than six times for the purpose of negotiating on the terms of the HMAs and for the purpose of conducting interviews with perspective employees. [VanDeHeede Decl., ¶¶15, 23]. Additionally, Olympia has availed itself of the laws of Illinois by operating other locations within the State. On its website, Olympia identifies itself as the Owner of multiple hotels and a restaurant in Illinois. [VanDeHeede Decl., ¶29] While The Bend has in no way availed itself to the State of Maine, Olympia has availed itself to the State of Illinois, and jurisdiction in more properly found in the State of Illinois.

The Bend has not purposefully availed itself of the state of Maine, and the governing law provision of the HMAs evidences an intent to do the opposite. Olympia, meanwhile, has purposefully availed itself of the State of Illinois. The facts do not support an exercise of personal jurisdiction in the State of Maine, and if anything, support an exercise of personal jurisdiction in the State of Illinois.

        iii.    <u>Reasonableness</u>

As discussed above, Olympia has not met its burden to demonstrate that The Bend has the requisite minimum contacts with Maine to establish either general or specific jurisdiction. Absent

---

[6] See the Declaration of Jeramee T. Gwozdz, Dkt. #14, and the Certificate of Good Standing evidencing Olympia's status as a foreign limited liability company admitted to transact business in the state of Illinois, attached as Exhibit 1 to the Declaration.

a finding that minimum contacts exist, it is unnecessary to proceed to the reasonableness analysis. *Noonan v. Winston Co.*, 135 F.3d 85, 92 (1st Cir. 1998). But even if this Court determines it is appropriate to conduct a reasonableness analysis, this Court should find that the reasonableness standard is not met here.

Courts must determine if the grant of personal jurisdiction in a matter is consistent with principles of justice and fair play. As applied to this case, the following matters are considered: The Bend's burden of appearing in Maine, the forum state's interest in adjudicating the dispute, Olympia's interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficient resolution of the matter, and the common interests of all states in promoting substantive social policies. See *Burger King Corp.*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp. v, Woodson*, 444 U.S. 286 (1980)). Unreasonableness can trump a minimally sufficient showing of relates and purposefulness, and the burden on the defendant is "always a primary concern." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) (citing *Volkswagen*, 444 U.S. at 292).

The Bend bears the burden of traveling from East Moline, Illinois to Portland, Maine, and procuring local counsel to defend against these allegations. Maine's interest in resolving the dispute is no greater than Illinois' interest in resolving the dispute, as pursuant to the HMAs, the law of Illinois is meant to control in determine the rights of the parties under the contract. The interstate judicial system's interest in obtaining convenient and effective relief is harmed by adjudication of this claim in the State of Maine, as a dispute between the parties is already ongoing in the state of Illinois. A Complaint for Damages was filed by The Bend against Olympia in the Circuit Court of the Fourteenth Judicial Circuit in Rock County, Illinois on May 2, 2019. That dispute relates to another contract between the parties, under which The Bend hired Olympia to

14

select and supervise a contractor who would provide essential equipment for the Hotel. An Amended Complaint was filed in the same action on July 26, 2019, and that matter is ongoing. A true and correct copy of the Amended Complaint in that case (Case No. 2019 L 58) is attached to as Exhibit 1 to the Declaration of Michael VanDeHeede. [VanDeHeede Decl., ¶29].[7] Olympia seeks to instigate another lawsuit in a different jurisdiction while the parties are adjudicating a dispute between them in Rock Island County, Illinois. While Olympia may have an interest in obtaining convenient and effective relief, it made a strategic decision to bring suit in Maine where The Bend is not subject to personal jurisdiction.

For the foregoing reasons, the personal jurisdiction standards have not been met. Olympia's complaint does not allege facts sufficient to determine that this Court has personal jurisdiction over The Bend.

## II. Olympia's Claims Against The Bend Should Be Dismissed for Lack of Subject-Matter Jurisdiction.

In addition to this matter being dismissed for a failure to allege facts sufficient to establish personal jurisdiction over The Bend, it should also be dismissed for a lack of subject-matter jurisdiction. Olympia has alleged that the Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the plaintiff and the defendant. Olympia subsequently alleges that Olympia is a citizen only of Maine, and that "[u]pon information and belief, none of the members of The Bend are citizens of Maine." [Compl. ¶ 3-6].

---

[7] The Bend asks that this Court take judicial notice of this pending case in Illinois, pursuant to Fed. R. Evid. 201. Rule 201(b) provides that the "court may judicially notice a fact that is not subject to reasonable dispute because it is (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Lussier v. Runyon*, 50 F.3d 1103, 1113 (1st Cir. 1995).

Olympia makes no allegations regarding the identity of The Bend's member(s) or the citizenship of any member(s).

"Diversity jurisdiction requires both an amount in controversy in excess of $75,000 and complete diversity of citizenship between all plaintiffs, on the one hand, and all defendants, on the other hand. (Citations omitted). *Bearbones, Inc. v. Peerless Indem. Ins. Co.*, 936 F.3d 12, 14 (1st Cir. 2019). For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members. *Id.* at 15. "It is the plaintiff's burden to prove the existence of subject matter jurisdiction." *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir.1996).

In *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125 (1st Cir. 2011), the Court of Appeals for the First Circuit evaluated whether the district court properly dismissed a party's attempt to remove an action from state court.  The notice of removal alleged that the plaintiff "is a Delaware limited liability company with a principal place of business in New York, New York." The court deemed that this allegation was insufficient to establish that the parties were diverse for purposes of diversity jurisdiction, because the citizenship of a limited liability company is determined by the citizenship of its members. The Court instructed counsel to file "an affidavit of jurisdictional facts describing the identities and place of citizenship of each and all of the members" to rectify the issue.

Here, Olympia has not even made allegations as to The Bend's principal place of business or state of organization, which would be fatal in most circumstances. Beyond that, Olympia has failed to allege with any specificity the identities and places of citizenship for each and all of the members of The Bend. In failing to do so, Olympia fails to allege sufficient facts for this Court to determine whether The Bend's member(s) would be considered citizens of the state of Maine.

Olympia's Complaint should be dismissed for a failure to allege sufficient facts for this Court to determine that it has subject matter jurisdiction over this suit.

### III.    In the Alternative, Olympia's Claims Against The Bend Should be Transferred to the Central District of Illinois.

For each of the reasons stated above, Olympia's claims against The Bend should be dismissed. But if this Court disagrees and finds personal jurisdiction to be proper, Olympia then requests that Olympia's claims against it be transferred to the Central District of Illinois under 28 U.S.C. §§1404(a) and 1406(a). Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought..." 28 U.S.C. § 1404(a). "[T]he purpose of [Section 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Pursuant to 28 U.S.C. §1406, a district court may transfer a case to another district court if venue is improper in the forum state or the Court lacks personal jurisdiction.  The factors to be considered by a court in the exercise of this discretion include the convenience of the parties and witnesses, the order in which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation. *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.1987).

The Central District of Illinois is a more convenient forum for the adjudication of Olympia's claims against The Bend. The Bend is based in Rock Island County, Illinois, and all of its employees are located in or near East Moline, Illinois. [VanDeHeede Decl. ¶8] The Bend has no connection to Maine, while Olympia has several connections to the state of Illinois. Olympia is registered as an LLC in the state of Illinois, and actively manages at least three hotel properties in the state of Illinois. [VanDeHeede Decl., ¶29 and Gwozdz Decl., ¶8.]  The Bend has been required

17

to seek newly appointed legal counsel in the state of Maine for this dispute, while Olympia has already retained counsel regarding the pending matter in Rock Island County.

In the event that the Court determines it has personal jurisdiction over The Bend, The Bend requests that this case be transferred to the Central District of Illinois pursuant to Section 1404.

### Conclusion

For these reasons, The Bend Hotel Development Company, LLC, respectfully requests that this Court grant its motion to dismiss Plaintiff Olympia Hotel Management Company, LLC's Complaint for lack of personal jurisdiction and grant such further relief as is appropriate.

Dated: May 29, 2020

Respectfully submitted,

/s/  James L. Oakley
James L. Oakley (*Pro Hac Vice*)
Jeramee T. Gwozdz (*Pro Hac Vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Tel.: (312) 836-4098
Fax: (312) 754-2371
joakley@taftlaw.com
jgwozdz@taftlaw.com

Aaron P. Burns
PEARCE, DOW & BURNS, LLP
Two Monument Square
Suite 901, P.O. BOX 108
Portland, Maine 04112
Tel.: (207) 822-9900
Fax: (207)-822-9901
aburns@pearcedow.com

*Counsel for Defendant The Bend Hotel Development Company, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, hereby certify that he caused this Motion to be filed on the Court's CM/ECF system and that to the best of my knowledge, said system caused it to be served on counsel for the Plaintiff electronically as set forth in the notice of electronic filing.

Dated: May 29, 2020

*/s/  James L. Oakley*