IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| OLYMPIA HOTEL MANAGEMENT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE BEND HOTEL DEVELOPMENT COMPANY, LLC, an Illinois limited liability company,<br><br>Defendant. | Civil Action No.: 2:20-CV-00136-NT |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS OR OTHERWISE TRANSFER**

Olympia's Response does not dispute any of the key facts in the Motion, all of which definitively demonstrate that The Bend's contacts with Maine were not instrumental in either the formation or alleged breach of the HMAs. Instead, it attempts to create a connection to Maine based on a laundry list of tasks that, at most, amount to communicating with the people in Illinois that were actually managing Defendant's Illinois hotel. As detailed in the Declaration of Raymond Stoddard, the General Manager of the Hotel, he and his staff of dozens (all Olympia employees) managed the hotel from Illinois. The HMAs were performed and allegedly breached in Illinois. The sporadic services provided by Olympia from Maine do not create personal jurisdiction over The Bend in this Court. Finally, Olympia has not alleged the citizenship of each member of the Defendant LLC, as it acknowledges is required under federal law. Instead, its Response lashes out at Defendant for highlighting this defect in the Motion. Olympia's pleading is defective and should be dismissed.

1

## ARGUMENT

**I.        The Bend's Contacts with the State of Maine were not Instrumental in the Contract or its Breach.**

"In contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look at the elements of the cause of action and ask whether the defendants' contacts with the forum were instrumental either in the formation of the contract or its breach." *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 299 (1st Cir.1999) (affirming that a Florida-based fund was not subject to personal jurisdiction in New Hampshire, where the school's alleged failure to transmit payments to the New Hampshire-based plaintiff were not related to the defendant's contacts with the forum state, and where the defendant did not avail itself of protections of New Hampshire law). No matter how significant Olympia's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated." *Walden v. Fiore*, 571 U.S. 277 (2014), citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). (Holding that a police officer defendant lacked minimal contacts with Nevada, and that the 9th Circuit had "improperly attribute[d] a plaintiff's forum connections to the defendant."). The relationship must arise out contacts that the "defendant himself" creates with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 472 (1985). Here, the undisputed facts show that The Bend's contacts with the forum were not instrumental either in the formation of the contract or its breach, and that The Bend has not created a relationship with Maine sufficient to subject itself to the personal jurisdiction of this Court. The Bend's contacts in relation to the formation of the contract were limited to the occasional phone call or email to Maine-based employees, and several of Olympia's traveled to Illinois during the process. The breach of the contract relates to an alleged failure to pay Olympia from an Operating Account maintained at a bank in Illinois, following services performed in the management of a hotel based in Illinois.

In *Teleford Aviation, Inc. v. Raycom Nat., Inc.*, 122 F. Supp. 2d 44 (D. Me. 2000), a Maine-based owner of aircraft located in Alabama brought a state court breach of charter agreement action against an Alabama company who had charted aircraft from the Maine-based company. The facts of the case are substantially similar to those present here: plaintiff asserted that Raycom initiated contract negotiations by contacting it in Maine, the subject property was not in Maine, and the dispute arose from defendant's alleged failure to pay the balance due on a contract. On these facts, the court determined that Raycom was not subject to personal jurisdiction in Maine, as its contacts did not "create continuing obligations to Maine consumers, nor did Raycom benefit from protections of Maine law through its phone calls and faxes to Telford in Maine." The court noted that "the bulk of the relevant actions took place in Alabama." *Id.* at 46-48. The court also factored the choice of law provision into its decision, which stated that the contract "shall be governed by and construed in accordance with the laws of the state of Alabama," even though, as here, it did not include explicit language regarding venue. *Id.* at 47. The Bend maintained no continuing obligations to Maine consumers, did not benefit from Maine's laws (and, in fact, exclaimed that benefit in the HMAs), and the subject property and bulk of the performance were in Illinois.

The fact that The Bend contracted with a Maine-based company is not determinative of the issue of personal jurisdiction. See *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 136 (1st Cir.2006) ("Evidence of a defendant's entry into a contractual relation with a plaintiff in another state is relevant to whether the defendant 'reached out' to that state. But the mere fact that a plaintiff entered into a contract with a defendant in the forum state is not in and of itself dispositive of the personal jurisdiction question"). Olympia's argument relies upon J. Paul Beitler's "cold call" to Maine and subsequent calls and correspondence with The Bend in the management of the Hotel. It did not matter to The Bend that Olympia was in Maine, and The Bend did not seek out Olympia

on that basis. The only reason Beitler contacted Maine-based Olympia was that Hyatt recommended he do so. See Declaration of Christine Chapin, Dkt. #15-3, ¶¶4-5). The alleged breach relates to a failure to maintain a balance in an Operating Account established at a bank in Illinois and a failure to pay Olympia following its termination of the contract on those grounds. The HMAs state that the Operating Account was the exclusive means through which Olympia was to pay "all costs and expenses maintaining, conducting, and supervising the operation of the Hotel incurred by Operator or Owner […]." [Dkt. #1-1 and #1-2.] The Bend's contacts with Maine pale in comparison to Olympia's contacts with Illinois, and The Bend's contacts are not sufficient to subject it to personal jurisdiction in Maine.

## II. This Litigation Arises out of Activities in the State of Illinois, not Maine.

Olympia, in trying to convince this Court of Maine's centrality to the dispute, has included in its Response a bullet-pointed list of tasks they claim to have performed on behalf of The Bend in managing the Hotel and an assortment of declarations and affidavits to bolster these claims. [Dkt. #15, p. 4-5]. However, the work which Olympia's Maine-based employees performed was generally sporadic, whereas Olympia's Illinois-based employees were in constant contact with The Bend and carried out the vast majority of services rendered by Olympia.

Raymond Stoddard was the General Manager of the Hotel from May 1, 2018 through April 30, 2020. Declaration of Raymond Stoddard ("Stoddard Dec."), ¶2. It was Stoddard and his team – Olympia employees – who performed the vast majority of Olympia's responsibilities in managing the Hotel, and all of his services were performed in or around East Moline. As general manager, Stoddard spoke with The Bend's management constantly about every aspect of the Hotel. Stoddard Dec, ¶6. By comparison, Stoddard's day-to-day interaction with Olympia's employees in Maine was less frequent and generally on an as-needed basis. Stoddard Dec., ¶7. Between his

hiring in May of 2018 and the opening of the Hotel that December, Stoddard played a central role in interviewing and hiring staff, meeting with potential clients, working with building contractors, purchasing and coordinating for the receiving and organization of furniture, fixtures, equipment and operating supplies for the Hotel, and working with the many Olympia employees who visited the property. Stoddard Dec. ¶¶8-10. Stoddard was tasked with learning and implementing Hyatt Hotels Corporation ("Hyatt")'s operating standards and procedures. Stoddard Dec. ¶11. He was directly involved in the hiring of supervisory personnel and general staff for the Hotel, and was ultimately responsible for their daily supervision Stoddard Dec. ¶12. Olympia's asserted "broad array of management and operational services," by contrast, were generally sporadic or single-occurrence acts. [Dkt. #15, p. 5-6]. While Olympia may have added The Bend to its pre-existing national insurance policies for liquor liability and workman's compensation, Stoddard worked in Illinois with a local insurance agent to procure a range of other insurance coverage for the Hotel. Stoddard Dec. ¶¶21-24. Stoddard and his Human Resources Manager were the primary point of contact for all questions relating to employees benefits at the Hotel, and they frequently contacted benefits plan administrators – and not Olympia – to answer employees' questions. Stoddard Dec. ¶¶24-25. Stoddard and his team managed bank deposits, processed invoices, and recorded and reported daily revenue data. They also played a direct role in administering payroll by verifying every employee's recorded hours and verifying that the ultimate payroll register matched their records. Stoddard Dec. ¶¶31-32. Rick Martin, Stoddard's supervisor and point of contact at Olympia, told Mr. Martin (not-verbatim) that Martin's role was to "support" Stoddard and his team, and that all of the decisions made regarding the Hotel would be made by Stoddard and his team. Stoddard Dec. ¶¶17-18. Olympia's administrative role paled in comparison to the role its employees in Illinois played in managing the Hotel. It was Stoddard and his team that worked to

5

solicit new business, supervise staff, order supplies and address day-to-day issues facing the Hotel. The managing of the Hotel – the purpose behind a "Hotel Management Agreement – was principally done by Olympia's Illinois-based staff.

This case is akin to *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111 (1st Cir. 1997). In *Lyle*, the 1st Circuit affirmed the dismissal of a purchasing agent's action brought in Massachusetts on the basis that the defendant corporation did not have sufficient contacts with the state to support jurisdiction. Ashford, a California-based company, hired Lyle to act as a purchasing agent for footwear manufactured overseas. Lyle performed his services from Massachusetts. Ashworth periodically forwarded purchase orders to Lyle, which Lyle in turn transmitted to a Chinese or Taiwanese factory. Ashford would communicate with Lyle in Massachusetts two or three times per week regarding ongoing contract performance. *Id.* at 111-113. The court determined that Ashworth was not subject to personal jurisdiction in Massachusetts where "most performance required from Lyle under the Agreement was to be rendered *outside* Massachusetts." *Id.* at 113. The court considered that most of the contract's "core contractual responsibilities" – which in *Ashworth* related to the inspection of merchandise – would have been performed overseas, rather than Massachusetts. Here, as in *Lyle*, most performance required under the Agreement was to be rendered outside of the plaintiff's chosen forum, and no part of the contract between The Bend and Olympia required Olympia to perform its duties in the plaintiff's chosen forum. To the contrary, Olympia's role under the HMAs was to provide for the management of the Illinois-based Hotel. Stoddard and his team performed the essential work in operating the Hotel from East Moline on a daily basis, as opposed to the bi-monthly, monthly, or by-request services performed by Olympia's Maine-based employees.

### III. Olympia Has Not Properly Pled Defendant's Citizenship.

In pleading an LLC's citizenship, the identity of the citizenship of each member must be specifically alleged. *United States Liab. Ins. Co. v. M Remodeling Corp.*, No. 20-CV-1287 (BMC), 2020 WL 1244658 (E.D.N.Y. Mar. 16, 2020) (dismissing case for lack of subject matter jurisdiction where Plaintiff did not know and, therefore, could not definitively allege the members of an LLC and their respective citizenship). In *M Remodeling Corp.*, Judge Cogan collected authority from virtually every federal circuit to support the foregoing proposition and his holding. He further underscored that this pleading requirement has been well settled for two centuries:

> Almost 200 years ago, the Supreme Court made it clear that a litigant cannot gloss over the facts relating to citizenship and invoke the federal forum. If the litigant cannot find a definitive basis for alleging the citizenship of each defendant, then the case belongs in state court. As Chief Justice Marshall stated, "the averment of jurisdiction shall be positive, [and] the declaration shall state expressly the fact on which jurisdiction depends. It is not sufficient that jurisdiction may be inferred, argumentatively, from its averments." *Id.* (citing *Brown v. Keene*, 33 U.S. 8 Pet. 112, 114, 8 L.Ed. 885 (1834)).

Plaintiff has failed to meet this pleading standard[1] and makes no attempt in its Response to argue otherwise. Instead, it asserts that The Bend's subject matter jurisdiction argument is "litigation gamesmanship" and "The Bend could have definitively addressed this issue by providing an affidavit from one of its members stating that he or she is a citizen of Maine. [Dkt. #15, p. 16-17]. Plaintiff fundamentally misunderstands pleading requirements. Plaintiff chose this forum and must satisfy its legal pleading requirements or face dismissal. That Plaintiff has chosen to cast aspersions on Defendant for highlighting Plaintiff's failure to follow basic pleading rules, an obviously proper function of a Rule 12(b) motion, speaks volumes. Plaintiff has not properly alleged subject matter jurisdiction and its complaint should be dismissed.

---

[1] Olympia's Complaint alleges only that The Bend "is a limited liability company. Upon information and belief, none of the members of The Bend are citizens of Maine." [Compl., Dkt. #1, ¶5]

7

                                                    Respectfully Submitted,

Dated: July 3, 2020

                              */s/Aaron P. Burns*
                              Aaron P. Burns
                              PEARCE, DOW & BURNS, LLP
                              Two Monument Square
                              Suite 901, P.O. BOX 108
                              Portland, Maine 04112
                              Tel.: (207) 822-9900
                              Fax: (207)-822-9901
                              aburns@pearcedow.com

                              */s/  James L. Oakley*
                              James L. Oakley (*Pro Hac Vice*)
                              Jeramee T. Gwozdz (*Pro Hac Vice*)
                              TAFT STETTINIUS & HOLLISTER LLP
                              111 E. Wacker Drive, Suite 2800
                              Chicago, IL 60601
                              Tel.: (312) 836-4098
                              Fax: (312) 754-2371
                              joakley@taftlaw.com
                              jgwozdz@taftlaw.com

                              *Counsel for Defendant The Bend Hotel Development Company, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the date indicated below I caused a copy of the foregoing pleading to be filed with the Court's ECF filing system, which will cause an electronic notice to be sent to counsel of record.

Dated: July 3, 2020

                                                      */s/Aaron P. Burns*
                                                      Aaron P. Burns
                                                      PEARCE, DOW & BURNS, LLP
                                                      Two Monument Square
                                                      Suite 901, P.O. BOX 108
                                                      Portland, Maine 04112
                                                      Tel.: (207) 822-9900
                                                      Fax: (207)-822-9901
                                                      aburns@pearcedow.com