## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| OLYMPIA HOTEL MANAGEMENT, LLC, a Delaware limited liability company, | |
| Plaintiff/Counter-Defendant, | |
| v. | 20-cv-00136-NT |
| THE BEND HOTEL DEVELOPMENT COMPANY, LLC, an Illinois limited liability company, | |
| Defendant/Counter-Plaintiff. | |

## THE BEND'S ANSWER, AFFIRMATIVE DEFENSES, <u>COUNTERCLAIM, AND DEMAND FOR JURY TRIAL</u>

Defendant/Counter-Plaintiff, The Bend Hotel Development Company, LLC ("The Bend"),

for its Answer to the Amended Complaint (the "Complaint") filed by Plaintiff/Counter-Defendant,

Olympia Hotel Management, LLC ("Olympia"), states as follows:

### PARTIES

1.     Plaintiff Olympia Hotel Management, LLC is a Delaware limited liability company.  Its principal place of business is in Portland, Maine.  Its sole member is The Olympia Companies, LLC.  The membership interests of The Olympia Companies, LLC are held by three irrevocable trusts, each of which is organized under the laws of Maine.  The trustee of each of the three trusts is a citizen of Maine.

**ANSWER:**     Upon information and belief, The Bend admits the allegations in the first

two sentences of Paragraph 1.  The Bend neither admits nor denies the remaining allegations in

Paragraph 1 because it lacks knowledge or information sufficient to know if the allegations are

true.

2.     Defendant The Bend Hotel Development Company, LLC is an Illinois limited liability company.  Its manager and principal financier is Daniel Michael Murphy, Jr. ("Murphy").  The Bend maintains its principal place of business in East Moline, Illinois.  None of The Bend's members are citizens of Maine.  For instance, according to a complaint The Bend recently filed in federal court in Illinois, The Bend's members are citizens of Illinois.  *See* N.D. Ill. Case No. 1:20-

cv-04636, ECF Doc. 1 (Aug. 6, 2020).  That none of The Bend's members are citizens of Maine is consistent with the representations that agents of The Bend have made to Olympia.

**ANSWER:**  The Bend admits that it is an Illinois limited liability company with its principal place of business in East Moline, Illinois and that Daniel Michael Murphy, Jr. ("Murphy") is its manager.  The Bend admits that none of its members are citizens of Maine and that it filed a complaint in case number 1:20-cv-04636 in the United States District Court for the Northern District of Illinois alleging that its members are citizens of Illinois.  The Bend denies the remaining allegations in Paragraph 2.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendant.

**ANSWER:**  Paragraph 3 calls for a legal conclusion to which no response is necessary. To the extent the Court requires a response to Paragraph 3, The Bend lacks knowledge as to the member or members of Olympia and the citizenship of Olympia's member or members and, therefore, denies same.

4.      Plaintiff Olympia Hotel Management, LLC is a limited liability company, the member of which is a citizen of Maine for diversity purposes.  Accordingly, Plaintiff is a citizen only of Maine.

**ANSWER:**  The Bend lacks knowledge as to the member or members of Olympia and the citizenship of Olympia's member or members and, therefore, denies the allegations in Paragraph 4.

5.      Defendant The Bend Hotel Development Company, LLC is a limited liability company.  The members of The Bend are citizens of Illinois for diversity purposes.  Accordingly, Defendant is a citizen only of Illinois.

**ANSWER:**  The Bend admits the allegations in Paragraph 5.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

**ANSWER:**     The Bend denies the allegations in Paragraph 6.

## FACTS

7.      Olympia provides hotel management services for hotels around the country. Olympia is an LLC within a family of entities controlled by The Olympia Companies, also located in Portland, Maine, which provides an array of hotel design, development, marketing, and management services.

**ANSWER:**     The Bend neither admits nor denies the allegations in Paragraph 7 because

it lacks knowledge or information sufficient to know if the allegations are true.

8.      The Bend is the owner of two Hyatt Hotels franchises located in East Moline, Illinois.  The franchises, which exist within the same physical structure, are known as Hyatt House, an extended stay hotel, and Hyatt Place, a "select service" or traditional nightly stay hotel (together, "the Hotel").  The Hotel opened in December 2018.

**ANSWER:**     The Bend denies the allegations in the first sentence of Paragraph 8.  The

Bend admits the remaining allegations in Paragraph 8.

9.      The Bend is one of at least two special purpose entities created, managed, and ultimately controlled by Murphy for the purpose of developing and operating the Hotel on a former industrial site in East Moline, Illinois.  Another special purpose entity created, managed, and ultimately controlled by Murphy to develop and operate the Hotel is Great River Property Development Hotels, LLC ("Great River"), formerly known as River Eagle Hotels LLC.

**ANSWER:**     The Bend admits that Murphy created, managed, and controlled it and Great

River Property Development Hotels, LLC ("Great River").  The Bend denies the remaining

allegations in Paragraph 9.

### Olympia is Hired to Operate the Hotel

10.      In 2013, J. Paul Beitler, acting as an agent of Murphy, placed an unsolicited telephone call to agents of Olympia working and present in Portland, Maine.  Beitler represented that he was responsible for obtaining permits, selecting consultants, and securing financing for the yet-to-be-developed Hotel.

**ANSWER:**     The Bend lacks knowledge as to the allegations in Paragraph 10 and,

therefore, denies same.

11.    Beitler further represented that he was calling agents of Olympia at the recommendation of Hyatt Hotels, which informed Beitler that Olympia would be able to assist in developing and operating the Hotel.

**ANSWER:**    The Bend lacks knowledge as to the allegations in Paragraph 11 and, therefore, denies same.

12.    During 2013 and early 2014, Olympia and Beitler negotiated an agreement under which Olympia would operate and manage the Hotel once it was developed and began operations. Over the course of the negotiations, Beitler and Murphy directed dozens of phone calls and emails regarding the terms of the agreement to Olympia in Portland, Maine.  At all times during these negotiations, Beitler and Murphy knew Olympia and its agents were located in Portland, Maine.

**ANSWER:**    The Bend lacks knowledge regarding the actions and knowledge of J. Paul Beitler and Olympia alleged in Paragraph 12 and, therefore, denies all allegations relating to same. The Bend denies the remaining allegations in Paragraph 12.

13.    On May 9, 2014, as a product of the above-described negotiations, Olympia and Great River executed two Hotel Management Agreement ("HMAs"), one each for Hyatt House and Hyatt Place.  True and correct copies of the HMAs are attached hereto as **Exhibit A** and **Exhibit B**.

**ANSWER:**    The Bend admits that Olympia and Great River entered into the agreements attached to the Complaint as Exhibits A and B.  The Bend denies the remaining allegations in Paragraph 13.

14.    The portions of the HMAs relevant to this Complaint are identical.  Under the HMAs, Olympia was responsible for certain functions related to the management and operation of the Hotel, including hiring and managing staff, advertising and promoting the Hotel, managing finances, and maintaining facilities.

**ANSWER:**    The Bend admits that Olympia and Great River entered into the agreements attached to the Complaint as Exhibits A and B.  Answering further, The Bend states that the Hotel Management Agreements ("HMAs") between The Bend and Olympia speak for themselves, and The Bend denies any attempt by Olympia to characterize the terms of the HMAs.  The Bend denies the remaining allegations in Paragraph 14.

15.     After the 2014 execution of the HMAs, Murphy enlisted Michael VanDeHeede ("VanDeHeede") to serve as his representative in interactions with Olympia.  VanDeHeede continues to function in this capacity.

**ANSWER:**     The Bend admits the allegations in the first sentence of Paragraph 15.  The

Bend denies the remaining allegations in Paragraph 15.

16.     VanDeHeede was convicted in 2013 in the U.S. District Court for the Central District of Illinois of three counts of filing a false tax return. *See* Case No. 4:12-cr-40084-SLD-JAG (C.D. Ill.).

**ANSWER:**     The activity in case number 4:12-cr-40084-SLD-JAG in the United States

District Court for the Central District of Illinois speaks for itself, and The Bend denies any attempt

by Olympia to characterize the activity in case number 4:12-cr-40084-SLD-JAG in the United

States District Court for the Central District of Illinois.  The Bend denies the remaining allegations

in Paragraph 16.

17.     In 2017, Great River and Olympia executed the First Amendment to each HMA. Under the First Amendment, Great River assigned its interest in each HMA to The Bend (among other changes).  True and correct copies of the First Amendment to the HMAs are attached hereto as **Exhibit C** and **Exhibit D**.

**ANSWER:**     The Bend admits that Great River and Olympia entered into the First

Amendment to each HMA attached to the Complaint as Exhibits C and D.  The First Amendment

to each HMA speaks for itself, and The Bend denies any attempt by Olympia to characterize the

terms of the First Amendment to each HMA.  The Bend denies the remaining allegations in

Paragraph 17.

18.     In connection with Olympia's performance under the HMAs, agents of Great River and subsequently The Bend directed dozens of phone calls and hundreds of emails to Olympia in Portland, Maine over the course of several years.  These phone calls and emails discussed an array of topics related to the future staffing and operation of the Hotel, and other matters pertaining to Olympia's performance under the HMAs.

**ANSWER:**     The Bend denies the allegations in Paragraph 18.

19.     With Great River's and The Bend's knowledge and ongoing and continuous participation, and to their benefit, Olympia's management team performed Olympia's executive

5

management responsibilities under the HMAs from Olympia's headquarters in Portland, Maine, over the course of several years. These responsibilities included overall oversight and management of the Hotel's on-site General Manager.

**ANSWER:**   The Bend denies the allegations in Paragraph 19.

20.     Pursuant to the HMAs, Olympia managed the Hotel's accounting and reporting functions from Portland, Maine. Olympia controlled and administered the Operating Account described below from Portland, Maine. Olympia managed the Hotel's annual budgeting process from Portland, Maine. Olympia also engaged in revenue management, financial reporting, payroll and benefits processing and management, bank account management and reconciliation, and accounts payable management from Portland, Maine. Olympia engaged in these activities with the knowledge and ongoing and continuous participation of Great River and The Bend.

**ANSWER:**   The Bend denies the allegations in Paragraph 20.

21.     Pursuant to the HMAs, Olympia managed the Hotel's insurance design, placement, and policy management from Portland, Maine. It handled insurance claims management and processing from Portland, Maine. Olympia engaged in these activities with the knowledge and ongoing and continuous participation of Great River and The Bend.

**ANSWER:**   The Bend denies the allegations in Paragraph 21.

22.     Pursuant to the HMAs, Olympia developed and managed the Hotel's marketing plan from Portland, Maine. Olympia managed relationships with the Hotel's national accounts from Portland, Maine. Olympia also made booking decisions for its key customer and booking categories from Portland, Maine. Olympia engaged in these activities with the knowledge and ongoing and continuous participation of Great River and The Bend.

**ANSWER:**   The Bend denies the allegations in Paragraph 22.

23.     Pursuant to the HMAs, Olympia managed the Hotel's human resources, including performance management, from Portland, Maine. Olympia also oversaw the Hotel's information technology from Portland, Maine by managing a third-party vendor also located in Portland, Maine that provided the Hotel's IT services. Olympia engaged in these activities with the knowledge and ongoing and continuous participation of Great River and The Bend.

**ANSWER:**   The Bend denies the allegations in Paragraph 23.

### Relevant Provisions of the HMAs

24.     Section 3.1 of the HMAs grants Olympia the authority to create one or more accounts (an "Operating Account") to effect the financial management of the Hotel. Under the HMAs, Olympia is to deposit all revenues from the operation of the Hotel into the Operating Account and pay all Hotel expenses out of the Operating Account. The HMAs require the Operating Account maintain a minimum working capital balance of $150,000.

**ANSWER:**   The HMAs speak for themselves, and The Bend denies any attempt by Olympia to characterize the terms of the HMAs.  The Bend denies the remaining allegations in Paragraph 24.

25.   Section 3.3 of the HMAs obligated Great River, and later The Bend, to fund all of the Hotel's obligations.

**ANSWER:**   The HMAs speak for themselves, and The Bend denies any attempt by Olympia to characterize the terms of the HMAs.  The Bend denies the remaining allegations in Paragraph 25.

26.   Section 5.2 of the HMAs provides Olympia the right to terminate the HMAs.  Under Section 5.2, Olympia may terminate the HMAs if The Bend defaults in the payment of any amount required to be paid to Olympia or to the Operating Account, and such default continues for more than ten (10) days after receipt by The Bend of written notice of such default from Olympia.

**ANSWER:**   The HMAs speak for themselves, and The Bend denies any attempt by Olympia to characterize the terms of the HMAs.  The Bend denies the remaining allegations in Paragraph 26.

27.   Section 4.2 of the HMAs provides for a Termination Fee.  In the event Olympia terminates the HMAs pursuant to Section 5.2, and such termination occurs in the period between 12 and 24 months after the Hotel opens, The Bend shall pay Olympia a Termination Fee of $150,000 under each HMA.

**ANSWER:**   The HMAs speak for themselves, and The Bend denies any attempt by Olympia to characterize the terms of the HMAs.  The Bend denies the remaining allegations in Paragraph 27.

### The Bend's Violations of the HMAs

28.   The Hotel opened in December 2018 and Olympia thereafter properly performed all of its obligations under the HMAs.

**ANSWER:**   The Bend admits that the Hyatt Place, a select service hotel, and Hyatt House, an extended stay hotel (collectively, the "Hotel"), located on a portion of 132.61 acres of

real property on the banks of the Mississippi River in East Moline, Illinois, opened in December

2018.  The Bend denies the remaining allegations in Paragraph 28.

29.     Within months after the Hotel opened, The Bend began to fail to maintain the minimum working capital balance of $150,000 in the Operating Account.  Beginning in mid-2019, Olympia repeatedly notified The Bend in writing of these failures to meet the required minimum working capital balance.

**ANSWER:**     The Bend denies the allegations in Paragraph 29.

30.     In early 2020, the shortfall in the working capital balance in the Operating Account became chronic and severe.

**ANSWER:**     The Bend denies the allegations in Paragraph 30.

31.     On March 16, 2020, Olympia formally notified The Bend in writing of its default under the HMAs for failure to maintain an adequate minimum working capital balance in the Operating Account.  Olympia informed The Bend that it had 10 days to cure this default before Olympia was entitled to terminate the HMAs.

**ANSWER:**     The Bend admits that it received a written communication from Olympia

dated on or about March 16, 2020.  The Bend denies any attempt by Olympia to characterize such

communication.  The Bend denies the remaining allegations in Paragraph 31.

32.     The Bend did not cure the insufficient working capital balance in the Operating Account.

**ANSWER:**     The Bend denies the allegations in Paragraph 32.

33.     Accordingly, on April 10, 2020—well after The Bend's 10-day cure period had expired—Olympia formally notified The Bend in writing that it was terminating the HMAs.

**ANSWER:**     The Bend admits that Olympia notified The Bend that it was purporting to

terminate the HMAs.  The Bend denies the remaining allegations in Paragraph 33.

34.     In a letter dated April 16, 2020, counsel for The Bend denied that Olympia was entitled to terminate the HMAs and refused to pay Olympia the Termination Fee of $150,000 due under each HMA (i.e., a total of $300,000).

**ANSWER:**     The Bend admits the allegations in Paragraph 34.

35.     To date, The Bend has failed to pay Olympia the $300,000 in Termination Fees to which Olympia is entitled under the HMAs and has denied any obligation to do so.

8

**ANSWER:**    The Bend admits that it has not paid Olympia any termination fee.  The Bend denies the remaining allegations in Paragraph 35.

## COUNT I: DECLARATORY JUDGMENT

36.     Olympia incorporates by reference the allegations in Paragraphs 1 through 35 above.

**ANSWER:**    The Bend reasserts and incorporates by reference its answers to Paragraphs 1 through 35 as though fully set forth herein.

37.     Olympia seeks a declaratory judgment against The Bend pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57.

**ANSWER:**    The Bend admits the allegations in Paragraph 37.

38.     An actual, present, and justiciable controversy exists between Olympia and The Bend with respect to their respective rights under the HMAs, including Olympia's right to terminate the HMAs and collect the $150,000 Termination Fee due under each HMA.

**ANSWER:**    The allegations in Paragraph 38 call for a legal conclusion to which no response is required.  To the extent the Court requires a response to Paragraph 38, The Bend denies the allegations in Paragraph 38.

39.     Olympia properly terminated the HMAs following The Bend's uncured defaults and is entitled to receive the Termination Fee due under each HMAs. The Bend denies Olympia properly terminated the HMAs and its obligation to pay any Termination Fee.

**ANSWER:**    The Bend admits the allegations in the second sentence of Paragraph 39. The Bend denies the remaining allegations in Paragraph 39.

40.     Accordingly, Olympia is entitled to a declaration (a) that it properly terminated under the HMAs and (b) that The Bend must pay Olympia $300,000 in Termination Fees.

**ANSWER:**    The Bend denies the allegations in Paragraph 40.

## COUNT II: BREACH OF CONTRACT

41.     Olympia incorporates by reference the allegations in Paragraphs 1 through 40 above.

**ANSWER:**     The Bend reasserts and incorporates by reference its answers to Paragraphs 1 through 40 as though fully set forth herein.

42.     The HMAs constitute valid and enforceable contracts between Olympia and The Bend.

**ANSWER:**     The Bend admits the allegations in Paragraph 42.

43.     Olympia at all times properly performed its material obligations under the HMAs.

**ANSWER:**     The Bend denies the allegations in Paragraph 43.

44.     The Bend breached the HMAs by refusing to pay Olympia the Termination Fee of $150,000 due under each HMA and denying its obligation to do so.

**ANSWER:**     The Bend denies the allegations in Paragraph 44.

45.     Olympia has suffered damages as a result of The Bend's breach.

**ANSWER:**     The Bend denies the allegations in Paragraph 45.

For relief, Defendant/Counter-Plaintiff, The Bend Hotel Development Company, LLC, respectfully requests that this Court dismiss the Amended Complaint filed by Plaintiff/Counter-Defendant, Olympia Hotel Management, LLC, and grant such further relief as shall be just and equitable.

## AFFIRMATIVE DEFENSES

Defendant/Counter-Plaintiff, The Bend Hotel Development Company, LLC, for its Affirmative Defenses to the Amended Complaint, states as follows:

### Affirmative Defense No. 1 (Full Performance)

1.     Both Counts in Olympia's Complaint are barred because The Bend fully performed under the HMAs.

### Affirmative Defense No. 2 (Prior Breach of Contract)

2.     Olympia's breach of contract claim is barred because The Bend is excused from performance based on Olympia's prior breaches of the HMAs, which include, but are not limited

10

to: (a) failing to hold all funds related to the operation of the Hotel, including all funds in the financial account(s) contemplated by Section 3.1 of the HMAs (the "Operating Account"), in trust, as required by Section 2.5 of the HMAs; (b) failing to prepare and execute an annual business plan, including a marketing plan, as required by Sections 2.4(b) and 2.10 of the HMAs; (c) mishandling the hiring, retention, and termination of various employees, including Dylaan Bibbs and Aleyah Ross; and (d) failing to pay various bills for the Hotel, including the DirecTV bill.

### Affirmative Defense No. 3 (Waiver)

3.      Olympia is barred from asserting both Counts in its Complaint, or from recovering any damages from The Bend, because The Bend repeatedly informed Olympia that there was no need to continue the initial minimum working capital balance of $150,000 for the Operating Account after the first operating year of the Hotel.

4.      Given Olympia's continuous knowledge of there being no need to continue the initial minimum working capital balance of $150,000 for the Operating Account after the first operating year of the Hotel, Olympia voluntarily and intentionally waived its alleged right to enforce the provisions of the HMA that require any initial minimum working capital balance for the Operating Account after the first operating year of the Hotel.

### Affirmative Defense No. 4 (Setoff and Recoupment)

5.      If any damages have been sustained by Olympia, although such is not admitted hereby or herein and is specifically denied, The Bend is entitled under the equitable doctrine of setoff and recoupment to offset all obligations of Olympia owed to The Bend against any judgment that may be entered against The Bend.

## COUNTERCLAIM

Defendant/Counter-Plaintiff, The Bend Hotel Development Company, LLC, for its Counterclaim against Plaintiff/Counter-Defendant, Olympia Hotel Management, LLC, states as follows:

### NATURE OF ACTION AND RELIEF REQUESTED

1.      The Bend retained Olympia to provide various hotel management services, including to hold all funds related to the management of the hotel "in trust."  Olympia failed to fulfill many of its required obligations under the two HMAs, and despite being entrusted by The Bend to hold The Bend's funds related to the management of the hotel in trust, Olympia engaged in improper activities and violated its duties to The Bend.

2.      Accordingly, The Bend brings this Counterclaim for a declaratory judgment, breach of contract, conversion, and breach of fiduciary duties and seeks to recover damages and attorney's fees, costs, and expenses.

### PARTIES

3.      The Bend is an Illinois limited liability company with its principal office in East Moline, Illinois, and The Bend's sole member is Great River Property Development Hotels, LLC.

4.      Great River Property Development Hotels, LLC is an Illinois limited liability company with its principal office in East Moline, Illinois, and Great River Property Development Hotels, LLC's members are Larry Anderson and Great River Property Development, LLC.

5.      Great River Property Development, LLC is an Illinois limited liability company with its principal office in East Moline, Illinois, and Great River Property Development, LLC's two members are Murphy and Michael Jacobs.

6.     Larry Anderson and Michael Jacobs are citizens of Illinois.  Murphy is a citizen of Wisconsin.

7.     Upon information and belief, Olympia is a Delaware limited liability company with its principal office in Portland, Maine, and Olympia's sole member is The Olympia Companies, LLC.

8.     Upon information and belief, The Olympia Companies, LLC is a Delaware limited liability company with its principal office in Portland, Maine, and The Olympia Companies, LLC's members are three irrevocable trusts organized under the laws of Maine.

9.     Upon information and belief, each trustee of the three irrevocable trusts serving as Olympia's members is a citizen of Maine.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Olympia and this action pursuant to 28 U.S.C. § 1367 because the claims asserted herein are so related to the claims asserted in Olympia's Complaint that they form part of the same case or controversy.

## FACTS

### Background, HMAs, and First Amendment to HMAs

11.     The Bend was the owner of the Hotel.

12.     The Hotel is located on a portion of 132.61 acres of real property on the banks of the Mississippi river in East Moline, Illinois.

13.     Great River, formerly known as River Eagle Hotels, LLC, was the developer of that property.

14.     In 2013 and 2014, Great River was simultaneously working to build the Hotel and find a manager who would manage the Hotel once it was built.

15.     After negotiating with Olympia to secure its hotel management services, Great River and Olympia ultimately entered into contracts under which Olympia would operate and manage the Hotel.

16.     On May 9, 2014, the parties executed the two HMAs, one governing Hyatt House, and the other governing Hyatt Place.  True and correct copies of the HMAs governing Hyatt House and Hyatt Place are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

17.     In March of 2017, Great River conveyed title to the Hotel to The Bend, and accordingly, Great River and Olympia executed the First Amendment to each HMA, under which the Bend was assigned the interest in each HMA by Great River.  True and correct copies of the First Amendment to the HMAs governing Hyatt House and Hyatt Place are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

18.     The HMAs refer to Olympia as "Operator," and due to the First Amendment to each HMA, the HMAs refer to The Bend as "Owner."

19.     The provisions in both HMAs are nearly identical, and they obligated and authorized Olympia to take various actions to operate the Hotel.

20.     For instance, Section 3.1 of the HMAs authorized Olympia to establish the Operating Account to "deposit all revenues collected from the authorization of the Hotel and any funds advanced by Owner or [Olympia]," and "pay the operating expenses of the Hotel, any approved capital expenditures and any other payments relative to the Hotel as required by the terms of th[e] [HMAs]."  Exs. A-B § 3.1(a).

21.     The HMAs required a $150,000 initial minimum working capital balance for the Operating Account for the first operating year of the Hotel, and any minimum working capital balance for the Operating Account after the first operating year of the Hotel was to be agreed to

14

by Great River and Olympia.  *See id.* ("The minimum working capital balance shall initially be set at $150,000 and shall be subject to review and adjustment by agreement of Owner and [Olympia] upon completion of the first operating year and each year thereafter.").

22.     Under Section 2.5 of the HMAs, all funds in the Operating Account, including "[a]ll funds received by [Olympia] in connection with the operation of the Hotel," were deemed funds of the Owner, and Olympia was required to hold such funds "in trust" for Owner.  *See id.* § 2.5.

23.     Section 2.5 of the HMAs states:

> 2.5     Collection of Revenues.  [Olympia] shall use diligent efforts to collect all revenues, deposits, and other charges which may become due Owner at any time from occupants, patrons, or others for sales or services provided in connection with or for the use of the Hotel or any portion thereof.  In addition, [Olympia] shall collect any income due Owner from miscellaneous sales and services provided to occupants or the public, including, but not limited to, occupant storage and coin-operated machines of all types. ***All funds received by the [Olympia] in connection with the operation of the Hotel shall be funds of the Owner and shall be held in trust by the [Olympia] for the Owner and deposited by the [Olympia] in the Operating Account in accordance with the terms of this Agreement.*** . . . .

*Id.* (emphasis added).

24.     The Bend entrusted Olympia to hold all funds related to the operation of the Hotel "in trust," and as a result, Olympia owed fiduciary duties to The Bend.

25.     The HMAs imposed additional obligations upon Olympia separate from its Operating Account-related obligations.

26.     For instance, Sections 1.2 and 2.8 of the HMAs state:

> 1.2     Management.  [Olympia] agrees to direct the management and operation of the Hotel in a first class manner and in accordance with the conditions and provisions set forth in this Agreement and any Franchise Requirements (as defined herein).  [Olympia] shall be responsible for: consultation with Owner pertaining to Owner's rental of guest rooms, operation of any restaurants, lounges, function rooms and other public facilities, including the advertising and promotion thereof; the maintenance and repair of the property; the hiring, promoting and discharging of staff as necessary; and other responsibilities required in the normal operation of

15

the Hotel.  [Olympia] shall also have direct responsibility for the maintenance of adequate systems of recordkeeping and reporting.  . . . .

2.8     Goods and Service Contracts.   [Olympia] shall, subject to the Annual Business Plan, negotiate contracts for goods, services and utilities reasonably necessary or desirable in connection with the operation of the Hotel in the usual course of business, including, but not limited to, utility services, vermin extermination, Hotel security, trash removal, elevator and boiler maintenance, heating and air conditioning maintenance, master television antenna services, telecommunications and internet connectivity services, laundry and dry cleaning services and all necessary supplies.  [Olympia] shall be authorized to enter into such service contracts in Owner's name acting as Owner's agent for such purposes provided that (a) the same are included in and are consistent with the Annual Business Plan, (b) such service contracts are cancel able on not more than thirty (30) days' notice, (c) such contract is not with an affiliate of the [Olympia], (d) a copy of any contract entered into in Owner's name shall be immediately sent to Owner, (e) contract term does not exceed one year (subject to the aforesaid 30-day termination right), and (f) termination fee of contract does not exceed $1,000. Owner shall have the right to direct [Olympia] to terminate a service contract. [Olympia] shall exercise commercially reasonable efforts to terminate any such service contract, provided that such request shall be subject to the condition that termination of the service contract does not violate applicable law and termination is consistent with the terms of the contract, as determined by [Olympia] in its reasonable discretion.

*Id.* §§ 1.2, 2.8.

27.     Additionally, Olympia was also "responsible for the hiring, promoting, discharging and supervising [of] all staff" under Section 2.1 of the HMAs.  *Id.* § 2.1.

28.     Further, the HMAs required Olympia to prepare and submit an annual business plan each fiscal year of the Hotel containing an operating budget, sales and marketing plan, and capital improvement plan and budget.  *See, e.g.*, *id.* § 2.4(b) ("[Olympia] shall be responsible for the preparation and submission of an annual business plan ('**Annual Business Plan**') for each Fiscal Year of the Hotel[] . . . .  The Annual Business Plan shall contain the following items: (i) the Operating Budget, (ii) the Sales and Marketing Plan, and (iii) the Capital Improvement Plan and Budget[] . . . ."); *id.* § 2.10 ("[Olympia] shall prepare and submit to Owner a marketing budget and plan, in accordance with the provisions of Section 2.4 hereof.  [Olympia] shall implement the Sales

16

and Marketing Plan, which shall provide for advertising, marketing and publicity plans and promotional material in accordance with the Annual Business Plan and in compliance with applicable laws, license requirements and/or Franchise Requirements, to be used to further Hotel revenues.").

29.    Section 7.14 of the HMAs states, "[i]n the event of a dispute between [The Bend and Olympia] with respect to the enforcement of either party's obligations contained [in the HMAs] and/or in connection with a breach of and/or default under th[e] [HMAs], the prevailing party shall be entitled to reimbursement of reasonable attorney's fees, costs, and expenses incurred . . . ." *Id.* § 7.14.

**Olympia's Violations of the HMAs and
Improper Activities Related to The Operating Account**

30.    The Hotel began operating in December of 2018.

31.    At all times while the HMAs were in effect, The Bend performed all of its required obligations, including, but not limited to, paying Olympia the monthly basic management fee required under Section 4.1 of the HMAs.  *See* Exs. A-B § 4.1.

32.    Olympia, however, violated the HMAs by failing to fulfill its required obligations, including, but not limited to, by engaging in the following activities:

a.    failing to prepare and execute an annual business plan, including a marketing plan, as required by Sections 2.4(b) and 2.10 of the HMAs;

b.    mishandling the hiring, retention, and termination of various employees, including Dylaan Bibbs and Aleyah Ross, causing The Bend to incur significant legal fees and other expenses; and

c.    failing to pay various bills for the Hotel, including the DirecTV bill.

33.     Further, Olympia engaged in improper activities with respect to the Operating Account.

34.     Specifically, on or about April 10, 2020, Olympia wrote itself a check for $48,000 from the Operating Account in violation of the HMAs, including Section 2.5.  A true and correct copy of the cancelled check Olympia wrote itself is attached hereto as **Exhibit E**

### The Bend's Communications with Olympia

35.     On April 10, 2020, the same day Olympia wrote itself a check for $48,000 from the Operating Account, counsel for Olympia sent a letter to counsel for The Bend purporting to terminate the HMAs based on language in Section 3.1(a) relating to the initial minimum working capital balance for the Operating Account.  A true and correct copy of this April 10, 2020 letter is attached hereto as **Exhibit F**.

36.     On April 14, 2020, counsel for The Bend formally notified Olympia that The Bend had discovered the fact that Olympia improperly wrote itself a check for $48,000 from the Operating Account in violation of the HMAs, and demanded Olympia immediately return these funds to the Operating Account.  A true and correct copy of this April 10, 2020 letter is attached hereto **Exhibit G**.

37.     On April 16, 2020, counsel for The Bend responded to Olympia's April 10, 2020 letter, reiterating that The Bend was not required to maintain an initial minimum working capital balance of $150,000 for the Operating Account after the first operating year of the Hotel under Section 3.1(a) of the HMAs, rejecting Olympia's attempt to terminate the HMAs, notifying Olympia of its various breaches of the HMAs uncovered so far, repeating its demand that Olympia return the $48,000 to the Operating Account, and demanding that Olympia indemnify The Bend

pursuant to Section 6.1 of the HMAs.  A true and correct copy of this April 16, 2020 letter is attached hereto as **Exhibit H**.

38.     Indeed, after the first operating year of the Hotel, The Bend repeatedly informed Olympia that there was no need to continue the initial minimum working capital balance of $150,000 for the Operating Account, as consistent with Section 3.1(a) of the HMAs.

39.     To date, Olympia has not returned the $48,000 to The Bend or the Operating Account.

**COUNT I**
**(Declaratory Judgment)**

40.     The Bend reasserts and incorporates by reference Paragraphs 1 through 39 as though fully set forth herein.

41.     The Bend seeks a declaratory judgment against Olympia pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57.

42.     An actual, present, and justiciable controversy exists between The Bend and Olympia with respect to their respective rights under the HMAs.

43.     The Bend was not required to continue the initial minimum working capital balance of $150,000 for the Operating Account after the first operating year of the Hotel, and Olympia had no basis to terminate the HMAs or collect any termination fee.

44.     Olympia denies that The Bend was not required to continue the initial minimum working capital balance of $150,000 for the Operating Account after the first operating year of the Hotel, and maintains that it properly terminated the HMAs and is entitled to receive a termination fee.

19

## COUNT II
### (Breach of Contract)

45.     The Bend reasserts and incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

46.     The Bend and Olympia negotiated and signed the HMAs.

47.     The HMAs were and are binding and enforceable agreements, supported by mutual assent and consideration.

48.     The Bend performed all of its obligations under the HMAs, except as performance thereof has been excused by the acts, conduct, and/or omissions of Olympia.

49.     Olympia is bound by the provisions of the HMAs.

50.     Olympia's breaches of the HMAs include, but are not limited to, the following:

    a.      failing to hold all funds related to the operation of the Hotel, including all funds in the Operating Account, in trust, as required by Section 2.5 of the HMAs;

    b.      failing to prepare and execute an annual business plan, including a marketing plan, as required by Sections 2.4(b) and 2.10 of the HMAs;

    c.      mishandling the hiring, retention, and termination of various employees, including Dylaan Bibbs and Aleyah Ross; and

    d.      failing to pay various bills for the Hotel, including the DirecTV bill.

51.     As a direct and proximate result of Olympia's breaches of the HMAs, The Bend has suffered substantial monetary damages in an amount to be proven at trial, plus attorney's fees, costs, and expenses, and interest.

## COUNT III
### (Conversion)

52.     The Bend reasserts and incorporates by reference Paragraphs 1 through 51 as though fully set forth herein.

53.     All funds in the Operating Account were deemed the property of The Bend under Section 2.5 of the HMA.

54.     Olympia exerted unauthorized and wrongful control over funds in the Operating Account by writing itself a check for $48,000.

55.     The Bend repeatedly demanded Olympia return the $48,000 to the Operating Account.

56.     To date, Olympia has not returned the $48,000 to the Operating Account.

57.     By writing itself a check for $48,000, Olympia converted The Bend's property.

58.     Olympia's actions with respect to the Operating Account, including writing itself a check for $48,000, have harmed The Bend.

59.     Olympia acted willfully and maliciously by intentionally seizing funds that did not belong to it and continuing to exert wrongful control over such funds long after The Bend demanded their return.

## COUNT IV
### (Breach of Fiduciary Duty)

60.     The Bend reasserts and incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

61.     Under the HMAs, Olympia owed fiduciary duties to The Bend because The Bend entrusted Olympia to hold all funds received in connection with the operation of the Hotel "in trust" for The Bend.

21

62.     Olympia's actions in writing itself a check for $48,000 constituted a breach of the fiduciary duties Olympia owed to The Bend.

63.     Olympia's breach of its fiduciary duties harmed The Bend by improperly reducing The Bend's funds in the Operating Account.

64.     Olympia acted willfully and maliciously by intentionally seizing funds that did not belong to it and continuing to exert wrongful control over such funds long after The Bend demanded their return.

For relief, Defendant/Counter-Plaintiff, The Bend Hotel Development Company, LLC, respectfully requests that this Court enter judgment in its favor and against Plaintiff/Counter-Defendant, Olympia Hotel Management, LLC, and:

a)  Declare that (i) The Bend was not required to continue the initial minimum working capital balance of $150,000 for the Operating Account after the first operating year of the Hotel, (ii) Olympia had no basis to terminate the HMAs, and (iii) Olympia is not entitled to collect any termination fee from The Bend;

b)  Award all damages suffered by The Bend due to Olympia's breaches of the HMAs;

c)  Order Olympia to disgorge the funds improperly taken from the Operating Account by Olympia;

d)  Award monetary damages in the amount that the Operating Account was reduced by Olympia's improper taking of the funds from the Operating Account;

e)  Award punitive damages, attorneys' fees, costs, and expenses, and pre-judgment interest on all damages suffered by The Bend; and

f)  Grant such other and further relief as shall be just and equitable.

**JURY TRIAL DEMANDED**

22

Dated:  November 10, 2020

Respectfully submitted,

**THE BEND HOTEL DEVELOPMENT COMPANY, LLC**

By:  _/s/ Zachary R. Clark_

James L. Oakley (joakley@taftlaw.com)
Zachary R. Clark (zclark@taftlaw.com)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Ste. 2800
Chicago, Illinois 60601
Phone:  (312) 527-4000

By:  _/s/ Aaron P. Burns_

Aaron P. Burns (aburns@pearcedow.com)
PEARCE, DOW & BURNS, LLP
Two Monument Square
Suite 901, P.O. Box 108
Portland, Maine 04112
Phone:  (207) 822-9900

23